

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| PAMELA JEAN BOWERS,<br>　　　　Plaintiff | §<br>§<br>§ |
| vs. | § CIVIL ACTION NO. 3:20-4486-MGL-KDW<br>§ |
| UNIVERSITY OF SOUTH CAROLINA and<br>DAVID W. VOROS,<br>　　　　Defendants. | §<br>§<br>§<br>§ |

**ORDER ADOPTING THE REPORT AND RECOMMENDATIONS
TO THE EXTENT PROVIDED HEREIN**

Plaintiff Pamela Jean Bowers (Bowers) filed this job discrimination employment action against her former employer, Defendant University of South Carolina (USC), and Defendant David W. Voros (Voros).

The matter is before the Court for review of two Reports and Recommendations from the United States Magistrate Judge. In the first Report and Recommendation (Report I), the Magistrate Judge suggests USC's motion for summary judgment be granted as to any Title VII disparate treatment or quid pro quo claims and any Title IX disparate treatment claims, and denied as to all other claims. In the second Report and Recommendation (Report II), the Magistrate Judge recommends Voros' motion for summary judgment be granted.

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The Court is charged with making a de novo determination of those portions of the Report to which specific objection is made, and the Court may

accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions.  28 U.S.C. § 636(b)(1).

The Magistrate Judge filed Reports I and II on July 6, 2023; and Bowers filed her timely objections to both Reports on July 20, 2023.  USC filed its reply to Bowers's objections on August 3, 2023, and Voros filed his reply on August 4, 2023.  Neither USC nor Voros filed any objections to the Reports.

Voros is Bowers's former spouse and colleague at USC's School of Visual Arts and Design, where he was still employed as a tenured professor when Bowers filed this lawsuit.  This case concerns Voros's alleged misbehavior directed at Bowers and USC's purported response and/or lack of an adequate response to his alleged misbehavior.

The Court will first discuss Report I, which concerns USC's motion for summary judgment. Bowers's amended complaint includes the following claims against USC: defamation, negligence, sex discrimination (under both Title VII and Title IX), retaliation (under both Title VII and Title IX), deliberate indifference (under Title IX), and breach of contract.  The parties, however, have stipulated to the dismissal of the defamation claim.

As the Court stated above, the Magistrate Judge suggests USC's motion for summary judgment be granted as to any Title VII disparate treatment or quid pro quo claims and any Title IX disparate treatment claims, and denied as to all other claims.  Bowers fails to object to the dismissal of her quid pro and Title IX disparate treatment claims.  So, the Court will dismiss those without objection.

Bowers lodges three objections to Report I.  In her first objection, she states the Magistrate Judge "overlooked [Bowers's] *McDonnell-Douglas* analysis with respect to [her] Title VII disparate treatment claim." Objections to Report I at 2 (emphasis omitted).

2

In discussing Bowers's Title VII disparate treatment claim, the Magistrate Judge states Bowers "briefly argues she has set out a Title VII disparate treatment claim. However, [she] does not explain whether she is attempting to proceed using direct evidence or is attempting to set out a prima facie case of disparate treatment." Report at 32 (citation omitted).

"Nowhere," according to the Magistrate Judge, "does Bowers explain to the court how she can prevail under either proof-scheme. . . . Bowers' failure to tie her alleged disparate treatment to specific adverse employment actions is fatal to this claim." *Id*.

The Magistrate Judge further notes that, although "Bowers makes the argument she was constructively discharged in the context of her retaliation claims. . . . [s]he never makes that argument in the context of her Title VII discrimination claims." *Id*. n.12 (citation omitted).

Bowers attempts to correct those deficiencies in her objections. And, although she failed to make these arguments to the Magistrate Judge, "as part of its obligation to determine de novo any issue to which proper objection is made, a district court is required to consider all arguments directed to that issue, regardless of whether they were raised before the [Magistrate Judge]." *United States v. George*, 971 F.2d 1113, 1118 (4th Cir. 1992).

In Bowers's objections, she goes with the *McDonnell Douglas* burden shifting framework in attempting to save her Title VII disparate treatment claim from summary judgment dismissal. To establish a prima facie case of discrimination in a Title VII disparate treatment claim such as this, Bowers must show (1) she is a member of a protected class; (2) she has satisfactory job performance; (3) she was subjected to adverse employment action; and (4) similarly situated employees outside her class received more favorable treatment. *See Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir.2007). "An adverse employment action is a discriminatory act which adversely affects the terms, conditions, or benefits of the plaintiff's employment." *James v. Booz–Allen &Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004).

As to the "protected class" element of Bowens's prima facie disparate treatment claim, she states "she is a member of a protected class (female)[.]" Objections to Repot I at 3. Concerning the "performance" requirement, Bowen contends "there is no evidence, and . . . USC has not argued, that she was failing to meet [its] expectations[,]" *Id*. Considering the "adverse action" and "similarly situated" factors contemporaneously, Bowers maintains "USC encouraging [her] to take unpaid leave, offering her a shorter contract, and constructively discharging her, while allowing . . . Voros . . . to continue teaching and working on campus, . . . and working remote, and to take paid leave, is evidence of disparate treatment that directly adversely affected [her] terms, conditions, and benefits of employment." *Id*. 3-4. With this, Bowers has successfully set out a prima facie basis for her disparate treatment claim.

As noted by the Magistrate Judge, under the *Mc McDonnell-Douglas* analysis, "once an employee meets her prima facie case, the burden shifts to the employer to set out a "legitimate, nonretaliatory reason" for the materially adverse actions." Report at 37. But, USC fails to offer any such reason. *Id*. "Accordingly, the burden cannot then shift back to Bowers to demonstrate that the reasons given were merely pretextual." *Id*

Therefore, for the reasons above, the Court will sustain Bowers's first objection.

In Bowers's second objection, she contends the Magistrate Judge "erred by excluding Bowers's constructive discharge from the disparate treatment analysis." Objections to Report I at 5 (emphasis omitted). But, inasmuch as the Court has already agreed Bowers has made out a prima facie case of disparate treatment, it need not consider this objection.

In Bowers's third objection, Bowers argues "[t]he Magistrate [Judge] overlooked discrete acts that occurred within the statute of limitations for [Bowers's] Title IX disparate treatment claims." Objections to Report I at 6 (emphasis omitted).

The Magistrate Judge stated in the Report Bowers "has pointed to no specific complaint that was not investigated or was handled in an otherwise flawed manner that took place on or after November 23, 2019. " Report at 45.

But, in Bowers objections, she maintains "[t]he flawed handling of [her] complaints about . . . Voros, including [her] complaints after November 2019, led to the adverse outcome of [her] taking additional leave, rather than returning to work, while . . . Voros continued his paid employment, from 2020 onward." Objections to Report I at 6-7. According to Bowers, "[t]he flawed proceedings, discrete acts, and erroneous outcomes occurred in December 2019 with [her] complaint and each semester that . . . USC denied [her] paid employment, while offering . . . Voros paid employment." *Id*. at 7.

Bowers failed to directly make this argument to the Magistrate Judge. Nevertheless, as noted before, the Court "is required to consider all arguments directed to that issue, regardless of whether they were raised before the [Magistrate Judge." *George*, 971 F.2d at 1118.

Inasmuch as it appears some of Bowers's Title VII disparate treatment claims occurred within the statute of limitation time period, the Court will also sustain this objection. As such, it will decline to grant summary judgment as to Bowers's Title VII disparate treatment claim.

The Court turns now to Report II, which concerns Voros's motion for summary judgment. In Bowers's amended complaint, she brought two claims against Voros: defamation and tortious interference with contractual relations. Although the Magistrate Judge suggests the Court grant summary judgment as to both claims, Bowers's objections address only the tortuous interference claim. Thus, the Court will grant, without opposition, Voros's motion for summary judgment as to Bowers's defamation claim against him.

Bowers lodges two objections against Report II. In Bower's first objection, she contends the Magistrate Judge erred in concluding "[t]he record contains [insufficient] evidence that [she] was

constructively discharged because of the hostile work environment that . . . Voros created." Objections to Report II at 2 (emphasis omitted).

As before, the Court will consider this argument, although it appears Bowens failed to clearly present it to the Magistrate Judge. *See George*, 971 F.2d at 1118 ("[A] district court is required to consider all arguments directed to that issue, regardless of whether they were raised before the [Magistrate Judge].").

"The elements of a cause of action for tortious interference with contract are: (1) existence of a valid contract; (2) the wrongdoer's knowledge thereof; (3) his intentional procurement of its breach; (4) the absence of justification; and (5) resulting damages." *Camp v. Springs Mortg. Corp.*, 426 S.E.2d 304, 305 (1993). "An essential element to the cause of action for tortious interference with contractual relations requires the intentional procurement of the contract's breach." *Eldeco, Inc. v. Charleston Cty. Sch. Dist.*, 642 S.E.2d 726, 732 (2007) (citation omitted).

"]T]he alleged act of interference must influence, induce, or coerce one of the parties to the contract to abandon the relationship or breach the contract. The plaintiff must show that, but for the interference, the contractual relationship would have continued." *Bocook Outdoor Media, Inc. v. Summey Outdoor Adver., Inc.*, 363 S.E.2d 390, 394–95 (S.C. Ct. App.1987) (abrogated on other grounds).

Put another way, "[t]he very nature of the tort of intentional interference with a contractual relationship requires that the third party's interference in fact procure the breach complained of. The alleged act of interference must influence, induce or coerce one of the parties to the contract to abandon the relationship or breach the contract." *Todd v. South Carolina Farm Bureau Mut. Ins. Co.*, 321 S.E.2d 602, 608 (S.C. Ct. App. 1984) (abrogated on other grounds). "The plaintiff must show that but for the interference, the contractual relationship would have continued." *Id*.

Simply put, construing all of the evidence in the record in a light most favorable to Bowers, there is an issue of material fact as to whether, but for Voros's alleged misbehavior, the contractual relationship between USC and Bowens would have continued. Therefore, the granting of summary judgment on this claim would be inappropriate. Or, as Bowens states, "there is a question for the jury whether . . . Voros engaged in his harassing conduct with the purpose of interfering with [her] contractual relationship with . . . USC, and whether his actions resulted in the procurement of the breach, or the termination of [her] employment relationship with . . . USC." Objections to Report II at 6.

Consequently, the Court will sustain this objection, as well.

In Bowers's second objection to Report II, she maintains the Magistrate Judge is mistaken in disagreeing that "[p]ersuasive authority exists to support the argument that a constructive discharge is a discharge for the purposes of a tortious interference with contract claim." Objections to Report II at 3 (internal quotation marks omitted) (emphasis omitted).

Given the Court's decision to allow Bowers's tortuous interference claim to go forward, it need not address this objection.

After a thorough review of the Report and the record in this case pursuant to the standard set forth above, the Court sustains Bowers's objections, as explained above, adopts the two Reports to the extent they do not contradict this Order, and incorporates them herein. Therefore, it is the judgment of the Court USC's motion for summary judgment is **GRANTED** as to Bowers's quid pro and Title IX disparate treatment claims, but **DENIED** as to the rest of her claims; and Voros's motion for summary judgment is **GRANTED** as to Bowers's defamation claim, but **DENIED** as to her tortuous interference claim.

**IT IS SO ORDERED**.

Signed this 22nd day of August, 2023, in Columbia, South Carolina.

/s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE